OMAR ORTIZ, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18673

June 28, 1988                    756 P.2d 1189

*Morgan D. Harris,* Public Defender, and *Terrence Jackson,* Deputy, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex A. Bell,* District Attorney, *James Tufteland,* Deputy, and *Daniel M. Seaton,* Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

*Facts*

As part of a drug trafficking investigation, undercover Las

_____

Vegas Police Officer, Cardell Pearson, received from a confidential informant a Juarez, Mexico, telephone number.[1] Pearson called the number and was advised by an individual identified as Patricia that Pearson could purchase five kilos of cocaine at a price of $28,000 a kilo. Patricia informed Pearson that her brother, appellant Omar Ortiz, would come to Las Vegas to make the transaction. At Patricia's request, Pearson wired $500 to Ortiz for travel expenses. Patricia also advised Pearson that her brother did not speak English very well.

Pearson met Ortiz and another individual named Alfredo at the Hilton Hotel where Pearson had reserved a room for Ortiz. Both men advised Pearson that they had very "heavy connections" and could get Pearson any amount of cocaine or marijuana that he wished. At this time, Pearson showed the two men $140,000 to be used for the purchase of the five kilos. Ortiz advised Pearson that it would take a little time because the cocaine was going to be delivered from Los Angeles to Las Vegas. A couple of days later, Alfredo informed Pearson that they were having some problems with the people in Los Angeles and that Ortiz had gone to Los Angeles to pick up the cocaine.

The next day, via telephone, Alfredo advised Pearson that Ortiz had returned, accompanied by their California connections. Alfredo further explained that they had brought only one kilo to see how the first deal would go and they would shortly stop by Pearson's room. Four people showed up: Ortiz, Alfredo, and two other men introduced only as Poncho and Marco. Ortiz was carrying an athletic bag over his shoulders and he and Alfredo motioned Pearson to follow them into the bathroom. Once inside, Ortiz removed from his bag a package which later proved to contain 1,101 grams of 82.7 percent pure cocaine. Pearson called another undercover officer to deliver the money. Once the money arrived, Pearson, Ortiz and Alfredo again entered the bathroom. Pearson told them $28,000 was too high a price for the kilo. Ortiz, in English, told Pearson that he would only charge $26,000. Pearson gave the money to Ortiz, who placed it in the top portion of his pants. As they exited the hotel room, all four suspects were confronted by the police. Ortiz ran to the bathroom where he removed the money from his pants and threw it onto the floor.

Ortiz was arrested and charged with trafficking in a controlled

---

[1] Eventually there were two telephone numbers involved. U.S. Customs Service Special Agent Lee E. Brenner discovered that the second telephone number was in El Paso and came back to a pocket pager device leased by appellant Omar Ortiz, with an address in Juarez, Mexico. The application filled out for the pager listed Ortiz' telephone number in Juarez—the same number Pearson had been given by the confidential informant.

substance, sale of a controlled substance and conspiring to commit the sale of a controlled substance. Because Ortiz was seventeen at the time of his arrest, the State filed a petition to certify Ortiz as an adult. At the initial certification hearing, probation officer Mary Resendez filed a certification report recommending that the State's motion to certify be denied. However, during the hearing it became apparent that Resendez had made her report without having read the investigative reports of the officers involved in the operation. In a continuation of the hearing, Resendez, based on the additional information in the reports, opined that Ortiz was much more involved in the conspiracy than he had originally admitted. Resendez also agreed that the transaction was a sophisticated buy. Even so, because Ortiz was living at home and had no previous criminal record, and because Resendez believed Ortiz would not again get involved in a crime of such magnitude, she did not change her recommendation that certification be denied.

The court concluded that Ortiz was charged with a heinous and egregious crime. Moreover, the judge was not convinced that Ortiz was so naive that he did not know what he was doing, and concluded that the evidence was clear and convincing that the public safety and welfare required that Ortiz face the charges as an adult. On appeal, Ortiz claims the court erred in transferring him to the adult court.

## Discussion

Under the guidelines set forth by this court in the case of In the Matter of Seven Minors, 99 Nev. 427, 664 P.2d 947 (1983), we are persuaded that the district court did not err in certifying Ortiz as an adult.

In *Matter of Seven Minors* we held that a juvenile court should decide for or against transfer on the basis of a matrix of categories: (1) the nature and seriousness of the charged offense or offenses, (2) the persistency and seriousness of adjudicated or voluntarily admitted past criminal offenses, and (3) the personal attributes of the offender. 99 Nev. at 442, 664 P.2d at 957. We also noted, however, that *either* seriousness of the charged offense or past record, or a combination of these two categories, may support a decision to transfer. *Id.* Once a transfer is justified on the basis of public interest and safety, there is no need to consider the "best interest of the child." *Id.* at 433, 664 P.2d at 951. In the instant case, we conclude that the seriousness of the crimes charged, combined with the extensive involvement of Ortiz in their perpetration, justify his certification as an adult.

The Legislature has clearly expressed its views as to the gravity of the criminal charges facing Ortiz by affixing harsh

penalties for the commission of such offenses.[2] If Ortiz had been but a "mule" or "runner" in the drug transaction, perhaps there would have been some basis for questioning the propriety of transferring him to the adult court. However, contrary to appellant's representation of the facts, the record provides substantial evidence that Ortiz was a major promoter and coordinator of the cocaine purchase.

The pager number given to Detective Pearson was leased to Ortiz. It was Ortiz to whom the initial expense money ($500) was sent. It was also Ortiz who went to Los Angeles to pick up the cocaine. When the time for the purchase arrived, Ortiz had possession of the cocaine and received the money from Pearson. Perhaps the most revealing fact indicating that Ortiz was a major actor in the conspiracy was the autonomy he exercised in accepting a lower price for the cocaine.

Our nation is in the midst of a serious drug crisis. The sale and trafficking of large quantities of cocaine represent a major threat to our communities. When juveniles, such as Ortiz, knowingly and extensively involve themselves in the sale and trafficking of significant quantities of controlled substances, their transfer to the adult criminal court may be readily justified as essential to public safety and welfare.

Accordingly, we affirm the decision of the district court certifying Ortiz as an adult in responding to the criminal charges specified against him.

---

[2]The penalty imposed for trafficking or selling 400 grams or more of a controlled substance is "imprisonment in the state prison for life or for a definite term of not less than 15 years and by a fine of not less than $250,000." NRS 453.3395(3).

NRS 453.3405(1) provides that "the adjudication of guilt and imposition of sentence of a person found guilty of trafficking in a controlled substance in violation of [NRS 453.3395] must not be suspended and the person is not eligible for parole until he has actually served the mandatory minimum term of imprisonment prescribed by the section under which he was convicted."